**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GUY HOBBS, an individual, | ) | Judge Amy J. St. Eve |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  12-CV-03117 |
| v. | ) | |
| | ) | |
| ELTON JOHN a/k/a SIR ELTON HERCULES | ) | |
| JOHN, an individual, BERNARD JOHN | ) | |
| TAUPIN a/k/a BERNIE TAUPIN, an | ) | |
| individual, and BIG PIG MUSIC LTD., a | ) | |
| foreign business organization, form unknown, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

s/Tom J. Ferber
s/Ilene S. Farkas (*Pro Hac Vice* pending)
s/Stephanie R. Kline (*Pro Hac Vice* pending)
PRYOR CASHMAN LLP
Attorneys for Defendants
7 Times Square
New York, New York  10036
PH:  (212) 421-4100
FX:  (212) 326-0806
tferber@pryorcashman.com
ifarkas@pryorcashman.com
skline@pryorcashman.com

s/Howard L. Huntington
Howard L. Huntington (ARDC 6256120)
MAHONEY SILVERMAN & CROSS, LLC
One of the Attorneys for Defendants
822 Infantry Drive, Suite 100
Joliet, Illinois  60435
PH:  (815) 730-9500
FX:  (815) 730-9598
hhuntington@msclawfirm.com

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................2

  A.  Defendants' Song ................................................................................................2

  B.  Plaintiff's Complaint ..........................................................................................3

  C.  Plaintiff's 2001 Correspondence ........................................................................4

  D.  The Alleged "Similarities" Between Plaintiff's Lyrics and Defendants' Song ......................5

ARGUMENT ..................................................................................................................7

  I.    STANDARD ON A MOTION TO DISMISS .......................................................7

  II.  PLAINTIFF HAS NO COGNIZABLE CLAIM FOR COPYRIGHT INFRINGEMENT.....9

    A.  There Is No Actionable Similarity Between The Lyrics Of The Two Songs At Issue....10

      1.  The Title, Basic Themes and Common Words and Phrases At Issue Are Not Protectable Under Copyright Law ........................................................10

        (a)  The Title Of Plaintiff's Lyrics Is Not Protectable ...............................11

        (b)  The Themes and Ideas in Plaintiff's Lyrics Are Not Copyrightable ..................11

        (c)  Common Words and Phrases Are Not Copyrightable ........................................14

      2.  There Is No Actionable Similarity Between The Songs ...........................................15

  III. PLAINTIFF'S CLAIMS FOR A CONSTRUCTIVE TRUST AND AN ACCOUNTING ARE PREEMPTED BY THE COPYRIGHT ACT ...........................................................16

  CONCLUSION..................................................................................................................18

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

Ahn v. Midway Manufacturing Co.,
    965 F. Supp. 1134 (N.D. Ill. 1997) ...................................................................17

Alberto-Culver Co. v. Andrea Dumon, Inc.,
    466 F.2d 705 (7th Cir. 1972) ..................................................................10, 14

Arica Institute, Inc. v. Palmer,
    970 F.2d 1067 (2d Cir. 1992).............................................................................15

Atari, Inc. v. North America Philips Consumer Electrics Corp.,
    672 F.2d 607 (7th Cir. 1982) .........................................................................9, 10

Baltimore Orioles, Inc. v. Major League Baseball Players Association,
    805 F.2d 663 (7th Cir. 1986) ............................................................................17

Bell v. Blaze Magazine,
    99 Civ. 12342 (RCC), 2001 U.S. Dist. LEXIS 2783 (S.D.N.Y. Mar. 16, 2001)...............15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)......................................................................................7

Berkic v. Crichton,
    761 F.2d 1289 (9th Cir. 1985) ..........................................................................14

Boone v. Jackson,
    206 Fed. Appx. 30 (2d Cir. 2006) ......................................................................11

Cavalier v. Random House, Inc.,
    297 F.3d 815 (9th Cir. 2002) ...........................................................................14

Currin v. Arista Records,
    724 F. Supp. 2d 286 (D. Conn. 2010)..................................................................11

Dellar v. Samuel Goldwyn, Inc.,
    150 F.2d 612 (2d Cir. 1945)...............................................................................2

Hayes v. Koch Entertainment,
    Civ. No. G-06-515, 2008 U.S. Dist. LEXIS 33418 (S.D. Tex. Mar. 14, 2008)................11

**<u>CASES</u>** **<u>PAGE(s)</u>**

Heriot v. Byrne,
    Civ. No. 08 C 2272 (SBC), 2008 U.S. Dist. LEXIS 104214
    (N.D. Ill. Dec. 23, 2008) ...................................................................................16, 17, 18

Incredible Technologies, Inc. v. Virtual Technologies, Inc.,
    400 F.3d 1007 (7th Cir. 2005) ...........................................................................10

JCW Investments, Inc. v. Novelty, Inc.,
    482 F.3d 910 (7th Cir. 2007) ........................................................................9, 11, 12

Lewinson v. Henry Holt & Co.,
    659 F. Supp. 2d 547 (S.D.N.Y. 2009) ..............................................................15

McDavid Knee Guard, Inc. v. Nike USA, Inc.,
    No. 08 CV 6584, 2010 U.S. Dist. LEXIS 3134 (N.D. Ill. Jan. 14, 2010).........................16

Menominee Indian Tribe v. Thompson,
    161 F.3d 449 (7th Cir. 1998) .............................................................................8

Muller v. Twentieth Century Fox Film Corp.,
    794 F. Supp. 2d 429 (S.D.N.Y. 2011) ...............................................................15

Narell v. Freeman,
    872 F.2d 907 (9th Cir. 1989) .............................................................................15

Nelson v. PRN Products, Inc.,
    873 F.2d 1141 (8th Cir. 1989) ...........................................................................10

Nichols v. Universal Pictures Corp.,
    45 F.2d 119 (2d Cir. 1930)................................................................................13

Peter F. Gaito Architecture, LLC v. Simone Development Corp.,
    602 F.3d 57 (2d Cir. 2010)................................................................................9

Peters v. West,
    776 F. Supp. 2d 742 (N.D. Ill. 2011) ................................................... passim

Publications Int'l, Ltd. v. Leapfrog Enters., Inc.,
    No. 01 C 3876 (RWG), 2002 U.S. Dist. LEXIS 20738 (N.D. Ill. Oct. 23, 2002) ..............8

Reyher v. Children's Television Workshop,
    533 F.2d 87 (2d Cir. 1976)................................................................................12

**CASES**                                                                    **PAGE(s)**

Staggs v. West,
      Civ. No. PJM 08-728, 2009 U.S. Dist. LEXIS 72275
      (D. Md. Aug. 17, 2009) ................................................................................................ 10, 15

Sweet v. City of Chicago,
      953 F. Supp. 225 (N.D. Ill. 1996) .................................................................................. 10

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
      551 U.S. 308 (2007) ........................................................................................................ 8

Theotokatos v. Sara Lee Personal Products,
      971 F. Supp. 332 (N.D. Ill. 1997) .................................................................................. 16

Tillman v. New Line Cinema Corp.,
      No. 05 C 0910 (MFK), 2008 U.S. Dist. LEXIS 18120 (N.D. Ill. March 7, 2008) ............ 12

Toney v. L'Oreal USA, Inc.,
      406 F.3d 905 (7th Cir. 2005) .......................................................................................... 17

Wavelength Film Co. v. Columbia Pictures Industrial, Inc.,
      631 F. Supp. 305 (N.D. Il. 1986) .................................................................................. 12

Wildlife Express Corp. v. Carol Wright Sales,
      18 F.3d 502 (7th Cir. 1994) ............................................................................................ 10

Zella v. The E.W. Scripps Co.,
      529 F. Supp. 2d 1124 (C.D. Cal. 2007) ...................................................................... 8, 10

**STATUTES**

17 U.S.C. § 101 ................................................................................................................ 17

17 U.S.C. § 102 .......................................................................................................... 17, 18

17 U.S.C. § 102(b) ............................................................................................................ 1

17 U.S.C. § 103 ................................................................................................................ 17

17 U.S.C. § 106 ................................................................................................................ 17

17 U.S.C. § 301(a) ............................................................................................................ 16

**<u>RULES</u>**                                                              **<u>PAGE(s)</u>**

Fed. R. Civ. P. 8(a)(2)............................................................................................................7

Fed. R. Civ. P. 12(b)(6).......................................................................................................2, 8

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Guy Hobbs ("Plaintiff" or "Hobbs"), a freelance photographer who in 1984 wrote lyrics for a never-completed love song about his doomed cruise ship romance with a Ukrainian waitress named "Natasha" ("Plaintiff's Lyrics"), brings this copyright infringement action based on Sir Elton John's 1985 hit "Nikita" ("Defendants' Song").

Despite admittedly (i) having heard Defendants' Song on the airwaves after its release over a quarter century ago, (ii) having read its printed lyrics in 2001, and (iii) having had his claim consistently rejected in extensive correspondence since 2001, Plaintiff belatedly brings this meritless claim before this Court in 2012 seeking damages and injunctive relief. Hobbs apparently perceives similarities between his unpublished lyrics and the lyrics of Defendants' Song, including the underlying "theme" of a love song about an "impossible love" that a "Western man" feels for a "Russian girl" and the presence in both works of elements that are common to love songs, such as references to the girl's eyes, repetition of the girl's name, and the songwriter's declarations that he "needs" the girl and wants "to hold" her.

The suggestion that the Grammy-award-winning composer/lyricist team of Elton John and Bernie Taupin – who have collaborated on over 30 albums, sold over 250 million records and have more than 50 "Top 40" hits – would need to copy these commonplace elements from Plaintiff's Lyrics is not only baseless and absurd, but it also misses the essential legal point – *i.e.,* that none of the similarities perceived by Hobbs constitutes a basis for a claim of copyright infringement. They are merely ideas and concepts which the Copyright Act expressly excludes from protection (17 U.S.C. §102(b)), and they are given markedly different expression in the parties' respective works. It is only substantial similarity of *expression* which is actionable, and there is none here.

This palpably meritless case is the product of two things: (i) a fundamental misapprehension of the scope of copyright protection – including, in particular, the critical distinction between unprotectable ideas or themes and the copyrightable expression of such ideas; and (ii) "that obsessive conviction, so frequent among authors and composers, that all similarities between their works and any others which appear later must inevitably be ascribed to plagiarism." Dellar v. Samuel Goldwyn, Inc., 150 F.2d 612, 613 (2d Cir. 1945) (per curiam). That "obsessive conviction" has motivated Plaintiff to pursue this aged claim that is not only without merit as a matter of both law and fact, but is objectively unreasonable and frivolous.

Defendants Elton John ("John"), Bernard Taupin ("Taupin") and Big Pig Music Ltd. ("Big Pig") (collectively "Defendants") therefore move to dismiss the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

### A.      Defendants' Song

As alleged in the Complaint, Defendants' Song was created and recorded in 1984 and 1985. (see Declaration of Ilene S. Farkas, Ex. A, ¶¶ 18-19).[1] Defendant Taupin wrote the lyrics to Defendants' Song and defendant John composed the music. The music of Defendants' Song is not at issue. Elton John's recording of Defendants' Song was released as a single in October 1985 and then released on Elton John's album, *Ice on Fire,* in November 1985. (Ex. A, ¶¶ 18-19.)

Defendants' Song enjoyed widespread success as a highly popular Elton John recording in the mid-1980s, and was a "top ten hit in most countries worldwide." (Id. at ¶¶ 14, 15, 25). Defendants' Song peaked at number 1 in six countries, at number 3 on the UK Singles Chart and

---

[1] Unless otherwise indicated, references to "Ex.__" herein are to Exhibits annexed to the Farkas Declaration.

at number 7 on the U.S. *Billboard* Hot 100. It has appeared on various compilation albums released throughout the world and has been "covered," or re-recorded, by dozens of recording artists.

**B.**     **Plaintiff's Complaint**

Plaintiff, a "freelance photojournalist" by profession, claims to have written Plaintiff's Lyrics in 1982, while working on board a Russian cruise ship. (Id. at ¶ 8). He allegedly became "romantically involved with one of the Russian waitresses" on the ship and was inspired to write his lyrics about "an impossible love affair between a Western man and a Russian woman during the Cold War." (Id. at ¶ 9.) Plaintiff was unable to find anyone to compose music to accompany his lyrics, despite his efforts to do so. (Id. at ¶ 10.)

While Plaintiff alleges that he "came across the *written* lyrics" of Defendants' Song "for the first time" in 2001 (Id. at ¶ 14; emphasis supplied), he also alleges that he "has been consistently communicating with John, Taupin and their attorneys" since 2001, and he admitted in the referenced correspondence that he had heard Defendants' Song some 15 years earlier. He stated that "[w]henever he heard [Defendant's Song] on the radio, he sometimes pondered at the uncanny similarities to his own song." (Ex. C).[2]

Defendants' representatives have consistently rejected Plaintiff's claims of infringement since he first asserted them in 2001. Although Defendants' representatives rejected Plaintiff's claims outright beginning in August 2001, Plaintiff did not commence suit for another 11 years. (see Ex. D).

Plaintiff alleges that "[t]here are significant similarities" between the two works' lyrics and that defendants John and Taupin "copied and incorporated substantial, original portions" of

---

[2] As noted above, Plaintiff acknowledged that he had not written a "song"; he had written only proposed lyrics for a potential song (hence his fruitless search for a composer). Thus, the only "similarities" which he could have thought that he heard in the 1980's were "similarities" to his lyrics.

Plaintiff's lyrics in Defendants' Song. (Ex. A at ¶¶ 14, 21-22.) Beyond these conclusions, the Complaint does not identify any specific alleged "similarity" between the lyrics of the two songs.[3]

The Complaint contains three "Counts": (1) Copyright Infringement; (2) Constructive Trust; and (3) Accounting. These claims are all based on the alleged unauthorized copying of Plaintiff's Lyrics in Defendants' Song and are asserted decades after Plaintiff first heard Defendants' Song.

**C.      Plaintiff's 2001 Correspondence**

The 2001 correspondence between Plaintiff and Defendants' representatives contain additional detail regarding the purported basis for Plaintiff's claims. For example, in several letters dated July 10, 2001 (the "July 2001 Letters"), Hobbs claimed that the lyrics to Defendants' Song must have been based on Plaintiff's Lyrics, and argued that "there can be no doubt that my Natasha lyrics were seen by Bernie [Taupin]." (collectively, Ex. B).

While the Complaint fails to set forth the alleged similarities between Plaintiff's Lyrics and the lyrics to Defendants' Song, the July 2001 Letters included a detailed document entitled "Natasha/Nikita – A Comparison" ("Plaintiff's Comparison") (Ex. C). In this document, in addition to acknowledging that he had noted the alleged similarities between his lyrics and Defendants' Song when the song was released in 1985, "[w]henever he heard [Defendants' Song] on the radio," Hobbs particularized the alleged similarities which he perceived between the works. (Id.)

---

[3] Plaintiff identified all of the alleged similarities between the two sets of lyrics in the 2001 correspondence referenced in the Complaint, as discussed below.

**D.    The Alleged "Similarities" Between Plaintiff's Lyrics and Defendants' Song**

Plaintiff's Comparison purports to describe "all the similarities between the 2 songs, both large and small…"  The following are all 12 areas of alleged "similarities":

**1.    "The theme":**  Plaintiff alleges that both works contain the similar "theme" of a "Western man who encounters impossible love with a Russian girl." (Ex. C).  Plaintiff's Lyrics reflect his experience of falling in love with a waitress on a cruise ship.  Hobbs and she were the "Ukraine girl and [] UK guy [who] just never stood a chance."  She "held [his] hand a bit too tight" as he "held back the tears," and she "sailed away" before they could go together to a movie or a dance.  (Id.).  The military woman in Defendants' Song is seen "by the wall" with her "[t]en tin soldiers in a row," and she "look[s] up through the wire" as "[g]uns and gates" "hold [her] in."  (Id.).

**2.    "The song title":** Plaintiff draws a connection between the titles of Plaintiff's Lyrics – "Natasha," and of Defendant's Song – "Nikita," by stating that both titles are "one word consisting of a popular female Russian name.  Both start with an N and end with A and have 3 syllables." (Id.).

**3.    "The repetitive use of the girl's name":**  Plaintiff alleges that "Nikita" is repeated 14 times in Defendants' Song, and "Natasha" is repeated 13 times in Plaintiff's Lyrics.

**4.    "The hook":**  Plaintiff also bases his claim on the appearance of the phrase "you'll never know" in the hooks of Defendants' Song and Plaintiff's Lyrics.  He compares the first line of the chorus in Defendant's song – "Oh Nikita you will never know anything about my home," to the last lines of the chorus in Plaintiff's Lyrics – "Natasha…Natasha…the freedom you'll never know."  (Id.).

5

5.      **Both works contain the phrase "to hold you":**   Plaintiff's claim is also based on the different uses of the phrase "to hold you" in different places in each work.  The second line of Defendants' Song's chorus is "I'll never know how good it feels to hold you."  The chorus of Plaintiff's Lyrics starts "I wanted just to hold you."  While Plaintiff states that the phrase appears "3 times" in each work, that is simply because it is in both choruses, which are repeated three times.  However, the phrase actually appears a fourth time in Defendants' Song (i.e., once in addition to the chorus).

6.      **Both works contain the phrase "I need you":**   Plaintiff takes issue with the use of the phrase "I need you" in the chorus of each work.  In Plaintiff's Lyrics, the second line of the chorus is "I love you girl, I need you."  The third line of the chorus of Defendants' Song is "Nikita I need you so."  (Id.).

7.      **Both songs use (different) words that rhyme with "know":**   Plaintiff complains that the chorus of Plaintiff's Lyrics ends with the lines "Natasha…Natasha…I didn't want to go. Natasha…Natasha…the freedom you'll never know….The freedom you'll never know," while the chorus of Defendants' Song ends with the lyrics, "Counting ten tin soldiers in a row.  Oh no, Nikita you'll never know."  Plaintiff apparently takes issue with the fact that his lyrics rhyme "go" with "know," while the chorus of Defendants' Song ends with the different rhyme  "row" and "know."  He identifies this as a "subtler" comparison, one that "may even go unnoticed unless pointed out.  These subtle similarities may by themselves not be copyright infringements."  (Ex. C).

8.      **Both songs involve "description[s] involving eyes":** Plaintiff also compares the line in Plaintiff's Lyrics referring to "misty tears in those pale blue eyes" with the lyric "eyes that

looked like ice on fire" in Defendants' Song.  Plaintiff concedes that this is "[o]ne of the more tenuous connections perhaps…"  (Id.).

9. **Both songs allegedly contain "the same postal theme":**  Plaintiff asserts that the lyric in Defendants' Song "do you ever see the letters that I write," was "inspired" by Plaintiff's Lyrics, which contain the verse, "you never sent me a Valentine."  (Id.).

10. **Both songs use "the concept of time":**  Plaintiff bases this alleged "similarity" on the appearance of the line "time was never ours" in Plaintiff's Lyrics, and the following lyrics in Defendants' Song: "Oh Nikita is the other side of any given line in time" and the verse "And if there ever comes a time/Guns and gates no longer hold you in/And if you're free to make a choice/Just look towards the west and find a friend."  (Id.).

11. **Both songs use the word "just":**  Plaintiff's eleventh similarity, admittedly "a small point," is that the word "just" appears three times in Plaintiff's Lyrics, and once in Defendants' Song.  (Id.).

12. **Both songs use the word "never":**  According to Plaintiff, the word "never" appears 12 times in Plaintiff's Lyrics, and 10 times in Defendants' Song (counting the chorus lyrics each time the chorus is sung).  (Id.).

There are over 200 lyrics in Defendants' Song that are not at issue.  For the Court's convenience, a side-by-side comparison of the lyrics is annexed to the Farkas Decl. at Exhibit F. The allegedly similar lyrics are highlighted.

## **ARGUMENT**

## I.  **STANDARD ON A MOTION TO DISMISS**

As the Supreme Court explained in <u>Bell Atl. Corp. v. Twombly</u>, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to make a "showing" that a plaintiff is entitled to relief

and this substantive threshold is not achieved by mere "blanket assertion[s]." 550 U.S. 544, 556 n. 3 (2007). A motion to dismiss under Rule 12(b)(6) acts to test the sufficiency and plausibility of the allegations in a complaint. Twombly, 550 U.S. at 570.

In deciding a motion to dismiss, courts will consider, in addition to the complaint, documents that have been incorporated into the complaint by reference, and matters of which a court may take judicial notice. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007); Menominee Indian Tribe v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998) ("A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."). Courts deciding Rule 12(b)(6) motions concerning claims of copyright infringement may take judicial notice of the content of lyrics, musical compositions and other general elements of creative works. See Peters v. West, 776 F. Supp. 2d 742, 747 (N.D. Ill. 2011) (court reviewed both lyrics at issue and dismissed copyright claim pursuant to Rule 12(b)(6)); Publications Int'l, Ltd. v. Leapfrog Enters., Inc., No. 01 C 3876 (RWG), 2002 U.S. Dist. LEXIS 20738, at *3 n.2 (N.D. Ill. Oct. 23, 2002) ("…the court is not limited merely to the allegations in the complaint and exhibits attached thereto. Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are both central to the plaintiff's claim and referenced in the complaint.") (citation omitted) (Ex. G); Zella v. The E.W. Scripps Co., 529 F. Supp. 2d 1124, 1128-29 (C.D. Cal. 2007).

The Court should thus consider, in addition to the facts alleged in the Complaint: (1) materials referenced in the Complaint; (2) materials relied on by Plaintiff in bringing the instant action; and (3) those materials integral to the allegations asserted, including:

- Defendants' Song (Ex. E) and a printout of its lyrics (Ex. H);

- Plaintiff's Lyrics (Ex. I); and

- Plaintiff's correspondence with Defendants' representatives and Plaintiff's

Comparison. (Exs. B-D).

If, upon reviewing this additional material, the Court finds that there is no actionable

similarity of copyrightable expression, infringement claims should be dismissed.  See Peter F.

Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) ("it is entirely

appropriate for the district court to consider the similarity between [contested] works in

connection with a motion to dismiss, because the court has before it all that is necessary in order

to make such an evaluation.").  A comparison of the lyrics of the two works in light of the

foregoing standards compels the conclusion that Plaintiff's claim for copyright infringement

should be dismissed as a matter of law.

## II.     PLAINTIFF HAS NO COGNIZABLE
## CLAIM FOR COPYRIGHT INFRINGEMENT

To prevail on a claim for copyright infringement, a plaintiff must prove: (1) ownership of

a valid copyright; and (2) unauthorized copying of constituent elements of the work that are

original.  JCW Invs., Inc. v. Novelty, Inc., 482 F.3d 910, 914 (7th Cir. 2007).  Because direct

evidence of copying is usually unavailable, copying may be inferred where a plaintiff can show

both that the defendant had access to the plaintiff's work and that the accused work is

substantially similar to the plaintiff's copyrighted work in protectable expression.  Atari, Inc. v.

North Am. Philips Consumer Elecs. Corp., 672 F.2d 607, 614 (7th Cir. 1982).[4]

To determine whether two works are substantially similar, the Seventh Circuit uses the

"ordinary observer test," which "must take into account that the copyright laws preclude

---

[4] Since both ownership of a valid copyright and access are facts alleged in the Complaint, they are outside
of the scope of this motion.  If necessary, Defendants will later demonstrate that none of them ever saw
Plaintiff's Lyrics at any time before Plaintiff contacted them in 2001 – 16 years after the creation and
release of Defendants' Song.

appropriation of only those elements of the work that are protected by the copyright." Atari, 672 F.2d at 614. Courts often employ a side-by-side comparison of the two works to determine whether they are indeed substantially similar in protectable expression. See, e.g., Wildlife Express Corp. v. Carol Wright Sales, 18 F.3d 502, 510 (7th Cir. 1994); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 710 (7th Cir. 1972); Peters, 776 F.Supp. at 751.

Courts regularly dismiss copyright infringement claims on Rule 12(b)(6) motions, where, as here, there is no substantial similarity of copyrightable expression. Peters, 776 F. Supp. 2d at 749; Sweet v. City of Chicago, 953 F. Supp. 225, 230 (N.D. Ill. 1996) (granting the defendants' motion to dismiss the plaintiff's copyright claim because the works were not substantially similar); Nelson v. PRN Prods, Inc., 873 F.2d 1141, 1143-44 (8th Cir. 1989) ("The trial judge could properly determine the matter of substantial similarity as a matter of law and did so by granting defendants' motion to dismiss the copyright count on the ground that it failed to state a claim for infringing use"); Staggs v. West, Civ. No. PJM 08-728, 2009 U.S. Dist. LEXIS 72275,*7-8 (D. Md. Aug. 17, 2009) (granting motion to dismiss where no substantial similarity existed between the few scattered and commonplace lyrical similarities) (Ex. J); Zella, 529 F. Supp. 2d at 1130 ("[t]here is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss") (citation omitted).

**A.    There is No Actionable Similarity Between
The Lyrics Of The Two Songs At Issue**

**1.    The Title, Basic Themes and Common Words and Phrases
At Issue Are Not Protectable Under Copyright Law**

"[C]opyright laws preclude appropriation of only those elements of the work that are protected by the copyright." Incredible Techs., Inc. v. Virtual Techs., Inc., 400 F.3d 1007, 1011

(7th Cir. 2005) (citation omitted). As such, courts remove the unprotectable elements from their consideration in determining whether the protectable elements of two works, standing alone, are substantially similar. Boone v. Jackson, 206 Fed. Appx. 30, 33 (2d Cir. 2006).

### a. The Title of Plaintiff's Lyrics Is Not Protectable

In Plaintiff's Comparison, Plaintiff contends that the title of Defendant's Song, "Nikita," is substantially similar to the title of Plaintiff's Lyrics, "Natasha." (Ex. C). It is well settled, however, that titles are not copyrightable. Peters, 776 F. Supp. 2d at 749; Hayes v. Koch Entm't, Civ. No. G-06-515, 2008 U.S. Dist. LEXIS 33418, *1 (S.D. Tex. Mar. 14, 2008) ("the similarity of the titles does not matter because they are categorically not protectable") (Ex. K); see also Currin v. Arista Records, 724 F. Supp. 2d 286, 293 (D. Conn. 2010) (holding that the title of the song, "frontin," is a "non-protectible element of the plaintiffs' song").

Moreover, the titles here are not even the same. Indeed, the similarities and differences between "Natasha" and "Nikita" provide a perfect example of what does not constitute actionable similarity. Plaintiff attaches undue significance to the fact that because both titles start with an "N," end with an "A" and have three syllables. (Ex. C). At best, Plaintiff seeks protection for an idea – one that is expressed differently in each unprotectable title – which cannot, as a matter of law, form the basis for an infringement claim. JCW Invs., Inc., 482 F.3d at 917. Indeed, as Plaintiff himself admits, the names of both songs are "popular female Russian name[s]." (Ex. C). Copyright law does not give Plaintiff the right to exercise dominion over "popular" names, let alone manifestly different ones.

### b. The Themes and Ideas in Plaintiff's Lyrics Are Not Copyrightable

Plaintiff's infringement claims relies on the alleged use by Defendants of several themes contained in Plaintiff's Lyrics: (1) the "theme" of "a Western man who encounters impossible

11

love with a Russian girl"; (2) descriptions of the girl's eyes; and (3) a "postal theme" in which Plaintiff compares his lyric "[y]ou never sent me a Valentine" with Defendant's Song's lyric "[d]o you ever see the letters I wrote."  (Ex. C).

It is axiomatic that copyright law does not protect ideas; it only protects an author's original expression of an idea.  JCW Invs., Inc., 482 F.3d at 917; Wavelength Film Co. v. Columbia Pictures Indus., Inc., 631 F. Supp. 305, 306 (N.D. ll. 1986).  Infringement, therefore, does not lie in taking a general theme, but rather its particular expression.  Tillman v. New Line Cinema Corp., No. 05 C 0910 (MFK), 2008 U.S. Dist. LEXIS 18120, *22-23 (N.D. Ill. March 7, 2008), citing Reyher v. Children's Television Workshop, 533 F.2d 87, 91 (2d Cir. 1976) (Ex. L).

Plaintiff concedes, as he must, that each of these "themes" is expressed differently in the two works.  For example, the so-called "postal theme" in Plaintiff's Lyrics concerns the girl's failure to send Valentines ("you never sent me a Valentine"), while the "postal theme" in Defendants' Song is a question, asking whether the girl on the other side of the "wall" has ever received the letters sent to her ("do you ever see the letters that I write").  These are examples not of actionable similarity, but of different expression being given to an alleged unprotectable "theme."  A "postal theme" focusing on the exchange and receipt (or non-receipt) of letters is simply not protectable.  Moreover, this unprotectable theme has been repeated time and time again in song lyrics, including Elvis Presley's "Return to Sender" and Robert Plant's and Jimmy Page's "Please Read the Letter."[5]

---

[5] The lyrics to these songs are available at http://www.lyricsfreak.com/e/elvis+presley/return+to+sender_20047831.html ("I gave a letter to the postman, he put it his sack.  Bright in early next morning, he brought my letter back.  She wrote upon it: Return to sender, address unknown. No such number, no such zone.  We had a quarrel, a lover's spat I write I'm sorry but my letter keeps coming back") and http://www.lyricsmode.com/lyrics/r/robert_plant/please_read_the_letter.html ("Please read my letter and promise me you'll keep.  The secrets and the memory to cherish in the deep.  Please read the letter that I wrote"), respectively.

The alleged theme of "emotive descriptions involving eyes" is expressed in Plaintiff's Lyrics as "misty tears in those pale blue eyes," while Defendants' Song supposedly expresses this theme through the lyric "with eyes that looked like ice on fire." (Ex. C). Again, this is an example of what does <u>not</u> constitute infringement – *i.e.*, different expression of a very basic idea – is this case, the idea of describing a girl's eyes in a love song. Moreover, describing a person's blue eyes as expressive of certain emotions is likewise an idea that has found its way into any number of song lyrics and titles, including Willie Nelson's "Blue Eyes Cryin' in the Rain" and Eric Clapton's "Blue Eyes Blue,"[6] to name just a few.

Most importantly, however, there is nothing protectable about the "theme" of an "impossible love" in song lyrics or any other expressive work, whether that love be between a Western man and Russian woman or otherwise. Indeed, it is perhaps the most widely recognized and persistent of all themes in creative works.[7] Moreover, this so-called "theme" is given <u>dis</u>similar expression in Plaintiff's Lyrics and Defendants' Song. Plaintiff's Lyrics specifically reflect Hobbs's doomed cruise ship romance with a Ukrainian waitress: As they parted, she "held [his] hand a bit too tight" as he "held back the tears" and she "*sailed away.*" Defendants' Song, by contrast, has nothing to do with "sailing," nor have the man and woman ever met. Indeed, she

---

[6] The lyrics to these songs are available at
http://www.lyricsmode.com/lyrics/w/willie_nelson/blue_eyes_crying_in_the_rain.html ("In the twilight glow I seen her, blue eyes crying in the rain) and
http://www.absolutelyrics.com/lyrics/view/eric_clapton/blue_eyes_blue/ (It was you, it was you who made my blue eyes blue"), respectively.

[7] Tales of forbidden love set against the background of hostile factions, ideologies, religions or families date back to before Shakespeare and have appeared in forms ranging from poetry to drama to song. As Judge Learned Hand stated in <u>Nichols v. Universal Pictures Corp.</u>, 45 F.2d 119, 122 (2d Cir. 1930), which concerned a copyright claim about the play "Abie's Irish Rose" and the film "The Cohens and The Kellys," both of which depicted familial conflicts engendered by the marriages of Jewish and Irish Catholic children: "A comedy based upon conflicts between Irish and Jews, into which the marriage of their children enters, is no more susceptible of copyright than the outline of *Romeo and Juliet.*" Similarly, in the present case, the "'theme" of an "impossible love" between a Western man and a Russian (or "Ukrainian") woman is not "susceptible of copyright."

has no reason to even know that he exists, since he admires her from afar "by the wall," with her "[t]en tin soldiers in a row," and she is "held in" by "wire," "[g]uns and gates."

There is simply no actionable similarity with respect to these unprotectable "themes," which are given dissimilar expression in the parties' works. See Cavalier v. Random House, Inc., 297 F.3d 815, 828 (9th Cir. 2002) ("The themes of teaching children to have confidence, to overcome their fears, and to try are not only too general to be protected but are also standard topics in children's literature"; affirming dismissal of claim concerning literary works); Berkic v. Crichton, 761 F.2d 1289, 1294 (9th Cir. 1985) ("[The] familiar scenes and themes [common to plaintiff's work and defendants' film] are among the very staples of modern American literature and film. The common use of such stock cannot raise a triable issue of fact on the plaintiff's copyright claim. It merely reminds us that in Hollywood, as in the life of men generally, there is only rarely anything new under the sun"; affirming dismissal of copyright claim).

### c. Common Words and Phrases Are Not Copyrightable

The remainder of the alleged "similarities" between Plaintiff's Lyrics and Defendants' Song consist of scattered and commonplace words and phrases, used differently and in different places in each song. These alleged similarities include: (1) "you will never know" or "you'll never know;" (2) "to hold you;" (3) "I need you" or "girl I need you;" (4) rhyming of the words "go" and "know" in Plaintiff's Lyrics and with the rhyming of "row" and "know" in Defendants' Song;" (5) the word "time;" (6) the word "never;" and (7) the word "just." (Ex. C). Each of these purported "similarities" – the only other "similarities" cited in the July 2001 Letters and Plaintiff's Comparison – falls under the precise definition of "unprotected elements" – names, phrases, slogans, titles and words are not subject to copyright protection. See Alberto-Culver Co., 466 F.2d at 710 (short phrase not protectable under copyright law); Peters v. West, 776 F.

14

Supp. 2d at 750; Narell v. Freeman, 872 F.2d 907, 911 (9th Cir. 1989) ("[p]hrases and expressions conveying an idea typically expressed in a limited number of stereotyped fashions are not subject to copyright protection"); Staggs v. West, Civ. No. PJM 08-728, 2009 U.S. Dist. LEXIS 72275, at * 8 (handful of allegedly similar words and phrases not copyrightable); Bell v. Blaze Magazine, 99 Civ. 12342 (RCC), 2001 U.S. Dist. LEXIS 2783, at *6 (S.D.N.Y. Mar. 16, 2001) ("Words and short phrases, such as titles or slogans, are insufficient to warrant copyright protection, as they do not exhibit the minimal creativity required for such protection. Similarly, copyright protection does not extend to a concept or idea, regardless of the form in which it is communicated, explained, illustrated, or embodied") (internal citations omitted) (Ex. M).

Plaintiff's suggestion that he should be given a monopoly over the use of these words and phrases is preposterous. The words "time," "never," and "just" and the phrases "you'll never know," "to hold you," and "I need you," have been incorporated into *countless* songs and other works, and the law will not permit Plaintiff to claim that the use of these generic words and phrases in a love song is actionable. These words and phrases are used differently in each song, in different places and with different lyrics surrounding them. See also Lewinson v. Henry Holt & Co., 659 F. Supp. 2d 547, 568 (S.D.N.Y. 2009) ("the 'ordinary' phrase may be quoted without fear of infringement'"), quoting Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072-73 (2d Cir. 1992). See generally Muller v. Twentieth Century Fox Film Corp., 794 F. Supp. 2d 429, 440 (S.D.N.Y. 2011) ("Critical to the issue of improper appropriation is that the copied elements of the work are original and non-trivial")(citation omitted; emphasis supplied).

### 2. There Is No Actionable Similarity Between The Songs

The determination of whether actionable similarity exists between two works may be decided as a matter of law. Peters, 776 F. Supp. 2d at 749; Bell, 99 Civ. 12342 (RCC), 2001 U.S.

Dist. LEXIS 2783, at *8 (citations omitted).  Using this standard, and after filtering out the

unprotectable words and phrases which are allegedly similar between the two works, this Court

can compare the two works for itself and conclude that Plaintiff's Lyrics and Defendants' Song

objectively share *no* similarities whatsoever – other than generic themes, words and phrases – let

alone any similarities of protected expression that can be categorized as substantial.  It is

respectfully submitted that the Court will see for itself that these are entirely different works and

the Court may determine as a matter of law that Defendants' Song is not actionably similar to

Plaintiff's Lyrics.  McDavid Knee Guard, Inc. v. Nike USA, Inc., No. 08 CV 6584, 2010 U.S.

Dist. LEXIS 3134, *9 (N.D. Ill. Jan. 14, 2010) (Ex. N); Theotokatos v. Sara Lee Personal Prods.,

971 F. Supp. 332, 340 (N.D. Ill. 1997).

A plaintiff cannot pick and choose a few non-copyrightable words or phrases out of

hundreds, claim a monopoly on their use, and prevent others from employing similar

unprotectable individual words and phrases in their works.  That is not what the copyright laws

were designed to protect.

Simply put, there are no actionable similarities between the two works and Plaintiff's

claims should thus be dismissed.

### III.     PLAINTIFF'S CLAIMS FOR A CONSTRUCTIVE TRUST AND AN ACCOUNTING ARE PREEMPTED BY THE COPYRIGHT ACT

Plaintiff's claims for a constructive trust and an accounting likewise fail because they are

preempted by the Copyright Act.  Section 301(a) of the Copyright Act explicitly preempts state

common law claims that are based upon subject matter and rights equivalent to those addressed

in the Act.  Heriot v. Byrne, Civ. No. 08 C 2272 (SBC), 2008 U.S. Dist. LEXIS 104214, *12

(N.D. Ill. Dec. 23, 2008), citing 17 U.S.C. § 301(a) (Ex. O).  Specifically, a state law claim is

preempted by the Copyright Act if two elements are satisfied: (1) the work in which the right is asserted must be fixed in a tangible form and within the scope of the subject matter of federal copyright as specified in § 102 (including literary works and movies) and in § 103 (compilations and derivative works); and (2) the right asserted must be equivalent to any of the exclusive rights within the general scope of copyright as specified in § 106. Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n, 805 F.2d 663, 674-79 (7th Cir. 1986).

A right under state law is "equivalent" to one of the rights within the general scope of copyright if is violated by the exercise of any of the rights set forth in § 106. Id. Thus, a right is equivalent if it is infringed by reproduction of the copyrighted work, preparation of derivative works, distribution of copies of the work, performance of the work publicly, or display of the work publicly. Id.; Heriot, Civ. No. 08 C 2272 (SBC), 2008 U.S. Dist. LEXIS 104214, at *7-8; 17 U.S.C. § 106. "A state law claim may be equivalent to a copyright claim even if it requires additional elements, if the additional elements do not differ in kind from those necessary for the copyright claim." Heriot, Civ. No. 08 C 2272 (SBC), 2008 U.S. Dist. LEXIS 104214, at *7-8 (citation omitted). "To avoid preemption, a state law claim must allege conduct that is qualitatively different from that governed by federal copyright law." Id. at *8 citing Toney v. L'Oreal USA, Inc., 406 F.3d 905, 910 (7th Cir. 2005).

Here, Hobbs wrote Plaintiff's Lyrics in 1982, and they were thus fixed in a tangible form. See Ahn v. Midway Mfg. Co., 965 F. Supp. 1134, 1138 (N.D. Ill. 1997); 17 U.S.C. § 101. Further, Plaintiff's Lyrics, a literary work, fall within the scope of the subject matter of federal copyright as specified in § 102. Thus, the first preemption element is met. With respect to the second preemption element concerning § 106, Plaintiff's claims for an accounting and a constructive trust are "equivalent" because Plaintiff explicitly premises these claims on his

17

copyright infringement claim.  See Heriot, Civ. No. 08 C 2272 (SBC), 2008 U.S. Dist. LEXIS

104214 at *12 (plaintiff's equitable accounting and unjust enrichment claims preempted by

Copyright Act where entirely premised on copyright co-ownership claim).  These claims are all

based on the alleged unauthorized use of Plaintiff's Lyrics in Defendants' Song.  Therefore,

Plaintiff's claims for an accounting and a constructive trust are preempted.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion should be

granted and Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

Dated:  August 7, 2012

Respectfully submitted,

By:

s/Tom J. Ferber
s/Ilene S. Farkas (*Pro Hac Vice* pending)
s/Stephanie R. Kline (*Pro Hac Vice* pending)
PRYOR CASHMAN LLP
Attorneys for Defendants
7 Times Square
New York, New York  10036
PH:  (212) 421-4100
FX:  (212) 326-0806
tferber@pryorcashman.com
ifarkas@pryorcashman.com
skline@pryorcashman.com

s/Howard L. Huntington
Howard L. Huntington (ARDC 6256120)
MAHONEY SILVERMAN & CROSS, LLC
Attorney for Defendants
822 Infantry Drive, Suite 100
Joliet, Illinois  60435
PH:  (815) 730-9500
FX:  (815) 730-9598
hhuntington@msclawfirm.com

## CERTIFICATE OF SERVICE/FILING

I hereby certify that on August 8, 2012, I electronically filed Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint  using the CM/ECF system which will send notification of such filing to all counsel listed below: dvoelker@voelkerlitigationgroup.com; tputzy@voelkerlitigationgroup.com.

<div style="margin-left:40%">

s/Howard L. Huntington
Howard L. Huntington (ARDC 6256120)
MAHONEY SILVERMAN & CROSS, LLC
One of the Attorneys for Defendants
822 Infantry Drive, Suite 100
Joliet, Illinois  60435
PH:  (815) 730-9500
FX:  (815) 730-9598
hhuntington@msclawfirm.com

</div>