**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GUY HOBBS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 12 C 3117 |
| ELTON JOHN a/k/a SIR ELTON | ) | |
| HERCULES JOHN, an individual, | ) | |
| BERNARD JOHN TAUPIN a/k/a | ) | |
| BERNIE TAUPIN, an individual, and BIG | ) | |
| PIG MUSIC, LTD., a foreign business | ) | |
| organization, form unknown, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On April 26, 2012, Plaintiff Guy Hobbs brought the present three-count Complaint

against Defendants Elton John, Bernard John Taupin, and Big Pig Music, Ltd., alleging

copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

(Count I), as well as state law claims for the equitable remedies of constructive trust (Count II)

and an accounting (Count III), pursuant to the Court's supplemental jurisdiction.  *See* 28 U.S.C.

§§ 1331, 1367(a).  On August 7, 2012, Defendants filed a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6).  For the following reasons, the Court grants Defendants' motion to

dismiss and dismisses this lawsuit in its entirety.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint.  *See Hallinan v.*

*Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Under

Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citation omitted). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). Courts may also consider documents attached to the pleadings without converting the motion into a motion summary judgment, as long as the documents are referred to in the complaint and central to the claims. *See Geinosky v. City of Chicago,* 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 556 (7th Cir. 2012) Fed.R.Civ.P. 10(c).

## BACKGROUND

### I.     Factual Allegations

Plaintiff Guy Hobbs, who was born in Australia and raised in the United Kingdom, is an award-winning freelance photojournalist. (R. 1, Compl. ¶ 7.) At the beginning of 1982, after studying photography at Salisbury Art College in the United Kingdom, Hobbs took his first job as a photographer on a Russian cruise ship, the Taras Shevchenko. (*Id*. ¶ 8.) While on board the Russian cruise ship, Hobbs became romantically involved with a Ukrainian waitress. (*Id*.)

Before leaving the Taras Shevchenko in the spring of 1982, he wrote the lyrics to a song called "Natasha" inspired by his experiences with the waitress. (*Id.* ¶ 9.) In his Complaint, Hobbs alleges that "Natasha" is about an impossible love affair between a Western man and an Ukrainian woman during the Cold War. (*Id.*)

In April 1982, Hobbs transferred to a Greek ship and, after a year at sea, he moved to London for two years. (*Id.* ¶ 10.) On May 10, 1983, Hobbs registered his copyright of "Natasha" in the United Kingdom through the process proscribed by the United Kingdom Intellectual Property Office. (*Id.*) Again, on November 11, 1983, Hobbs registered his copyright of "Natasha" in the United Kingdom, along with four other songs' lyrics he had written. (*Id.* ¶ 12.) Meanwhile, based on information Hobbs found in a September 1984 issue of a magazine called "The Songwriter," Hobbs forwarded the "Natasha" lyrics to several music publishers, including Defendant Big Pig, asking them to consider publishing his lyrics and assisting him in connecting with singer/songwriter collaborators. (*Id.* ¶ 11.) Hobbs maintains that at that time, he thought Big Pig was an independent publishing company and did not know it was affiliated with Defendants John and Taupin. (*Id.*)

In October 1984, after having had no success with his lyrics, Hobbs returned to his career as a photojournalist. (*Id.* ¶ 13.) In 2001, Hobbs came across the written lyrics of Defendants' "Nikita" for the first time in a song book.[1] (*Id.* ¶ 14.) According to Hobbs, "Nikita" involves an impossible love affair between a Western man and an East German woman during

---

[1] Although the statute of limitations for copyright infringement is three years and starts to run when the plaintiff learns, or should have learned, that the defendant was violating his rights, *see Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004), Defendants did not move to dismiss Hobbs' Complaint as untimely.

the Cold War. (*Id*.) Hobbs further alleges that when he read the "Nikita" lyrics, he was shocked by the many similarities between the lyrics of "Nikita" and "Natasha" and that since 2001, he has consistently communicated with Defendants John, Taupin, and their attorneys demanding compensation for the unauthorized use of his lyrics. (*Id*. ¶¶ 14-15.)

In 1985, Big Pig copyrighted the musical composition entitled "Nikita" – Certificate of Registration PA0000267371/1985-11-18. (*Id*. ¶ 27.) Hobbs maintains that the authorship on the "Nikita" copyright application lists John and Taupin, although Hobbs alleges that John and Taupin never sought or obtained his permission to copy, duplicate, perform, or otherwise use his lyrics to "Natasha" in their musical composition and sound recording of "Nikita." (*Id*. ¶¶ 27-28.)

## II.    Songs' Lyrics

The lyrics to Defendants' song "Nikita" are as follows:

Hey Nikita is it cold
In your little corner of the world
You could roll around the globe
And never find a warmer soul to know

Oh I saw you by the wall
Ten of your tin soldiers in a row
With eyes that looked like ice on fire
The human heart a captive in the snow

Oh Nikita you will never know, anything about my home
I'll never know how good it feels to hold you
Nikita I need you so
Oh Nikita is the other side of any given line in time
Counting ten tin soldiers in a row
Oh no, Nikita you'll never know

Do you ever dream of me
Do you ever see the letters that I write
When you look up through the wire
Nikita do you count the stars at night

And if there comes a time

4

Guns and gates no longer hold you in
And if you're free to make a choice
Just look towards the west and find a friend

Oh Nikita you will never know, anything about my home
I'll never know how good it feels to hold you
Oh no, Nikita you'll never know

Oh Nikita you will never know, anything about my home
I'll never know how good it feels to hold you
Nikita I need you so
Oh Nikita is the other side of any given line in time
Counting ten tin soldiers in a row
Oh no, Nikita you'll never know

Counting ten tin soldiers in a row.

(R. 23-10, Ex. H, "Nikita" lyrics.)

Hobbs' lyrics to "Natasha" are:

You held my hand a bit too tight
I held back the tears
I wanted just to hold you, whisper in your ear
I love you, girl I need you
Natasha...Natasha...   I didn't want to go
Natasha...Natasha...   the freedom you'll never know
                       the freedom you'll never know

But a Ukraine girl and a UK guy just never stood a chance
Never made it to the movies, never took you to a dance
You never sent me a Valentine, I never gave you flowers
There was so much I had to say
But time was never ours
You sailed away – no big goodbyes
Misty tears in those pale blue eyes

I wanted just to hold you, whisper in your ear
I love you, girl I need you
Run my fingers through your hair
Natasha...Natasha...   I didn't want to go
Natasha...Natasha...   the freedom you'll never know
                       the freedom you'll never know

5

You held my hand a bit too tight
I held back the tears
I wanted just to hold you, whisper in your ear
I love you, girl I need you
Natasha...Natasha...    I didn't want to go
Natasha...Natasha...    the freedom you'll never know
                        the freedom you'll never know

But Natasha ..... Remember me [*spoken quietly*].

(R. 23-11, Ex. I, "Natasha" lyrics.)

## ANALYSIS

## I.    Copyright Infringement Claim – Count I

To establish a copyright infringement claim, a plaintiff must show: "(1) ownership of a

valid copyright; and (2) unauthorized copying of constituent elements of the work that are

original."  *See Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012) (citation omitted); *see also*

*Nova Design Build, Inc. v. Grace Hotels, LLC,* 652 F.3d 814, 817 (7th Cir. 2011).  As to the

second requirement, due to the rarity of direct evidence of copying, "a plaintiff may prove

copying by showing that the defendant had the opportunity to copy the original (often called

'access') and that the two works are 'substantially similar,' thus permitting an inference that the

defendant actually did copy the original."  *Peters,* 692 F.3d at 633; *see also Nova Design Build,*

652 F.3d at 817-18.  The Court focuses on the "substantially similar" aspect of this requirement

because it is dispositive.[2]  The substantially similar test, also known as the "ordinary observer"

test, requires the Court to consider "whether the accused work is so similar to the plaintiff's

work that an ordinary reasonable person would conclude that the defendant unlawfully

---

[2]  Defendants concede ownership and access solely for purposes of this motion to
dismiss.

6

appropriated the plaintiff's protectible expression by taking material of substance and value."

*Incredible Tech., Inc. v. Virtual Tech., Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005) (citation

omitted). The Seventh Circuit has recently simplified the test for substantial similarity, namely,

whether "the two works share enough unique features to give rise to a breach of the duty not to

copy another's work." *Peters,* 692 F.3d at 633-34. "The test for substantial similarity is an

objective one." *JCW Inv., Inc. v. Novelty, Inc.,* 482 F.3d 910, 916 (7th Cir. 2007).[3]

    In their motion to dismiss, Defendants ask the Court to compare the lyrics of the two

songs "Nikita" and "Natasha" pursuant to Rule 10(c) arguing that the lyrics are not substantially

similar. *See Peters,* 692 F.3d at 633. Hobbs does not object to Defendants' Rule 10(c) request,

and because the Complaint references both songs' lyrics and the lyrics are central to this lawsuit,

it is appropriate under Rule 10(c) and Seventh Circuit case law for the Court to consider

Defendants' attachments containing the songs' lyrics. *See Geinosky,* 675 F.3d at 745 n.1;

*Wigod,* 673 F.3d at 556; *Peters v. West,* 776 F.Supp.2d 742, 747 (N.D. Ill. 2011).

### A.    Non-Protectable Elements

    There are several limitations to copyright protection that are relevant to the parties'

arguments. First, it is well-established that common words and phrases are not protected under

the Copyright Act. *See Peters*, 692 F.3d at 635-36 (The ubiquity of "what does not kill me,

makes me stronger" suggests that Defendants lyrics do not infringe on Plaintiff's song); *Johnson

v. Gordon,* 409 F.3d 12, 24 (1st Cir. 2005) ("You're the one for me" too common and trite to

---

[3] Because the test for substantial similarity is an objective test, district courts may determine copyright infringement claims at the motion to dismiss stage of litigation. *See, e.g., Peters v. West,* 776 F.Supp.2d 742 (N.D. Ill. 2011), *aff'd Peters v. West,* 692 F.3d 629 (7th Cir. 2012); *O'Leary v. Books,* No. 08 C 0008, 2008 WL 3889867, at *2-3 (N.D. Ill. Aug. 18, 2008).

warrant copyright protection); *Acuff-Rose Music, Inc. v. Jostens, Inc.,* 155 F.3d 140, 144 (2d Cir.

1998) (phrase "you've got to stand for something, or you'll fall for anything" too common to

accord copyright protection); 37 C.F.R. § 202.1.  In other words, "phrases that are 'standard,

stock, ... or that necessarily follow from a common theme or setting' may not obtain copyright

protection."  *Lexmark Int'l Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 535 (6th Cir.

2004) (citation omitted).

    In addition, it is "a fundamental tenet of copyright law that the idea is not protected, but

the original expression of the idea is."  *JCW Inv.,* 482 F.3d at 917.  Put differently, the

"Copyright Act protects the expression of ideas, but exempts the ideas themselves from

protection."  *Seng-Ting Ho,* 648 F.3d at 497 (citation omitted).  As the Supreme Court recently

explained:

> The idea/expression dichotomy is codified at 17 U.S.C. § 102(b): "In no case does
> copyright protec[t] ... any idea, procedure, process, system, method of operation,
> concept, principle, or discovery ... described, explained, illustrated, or embodied
> in [the copyrighted] work."  "Due to this [idea/expression] distinction, every idea,
> theory, and fact in a copyrighted work becomes instantly available for public
> exploitation at the moment of publication"; the author's expression alone gains
> copyright protection.

*Golan v. Holder*, ___ U.S. ___, 132 S.Ct. 873, 890, 181 L.Ed.2d 835 (2012) (citing *Harper &*

*Row Publishers, Inc. v. National Enter.,* 471 U.S. 539, 556, 105 S.Ct. 2218, 85 L.Ed.2d 588

(1985) ("idea/expression dichotomy strike[s] a definitional balance between the First

Amendment and the Copyright Act by permitting free communication of facts while still

protecting an author's expression") (internal quotation marks omitted)).  "This limitation on

copyright protection promotes the purpose of the Copyright Act by assuring 'authors the right to

their original expression,' but also by 'encourag[ing] others to build freely upon the ideas and

8

information conveyed by a work.'" *Seng-Tiong Ho,* 648 F.3d 497 (citation omitted).

Furthermore, the *scènes à faire* doctrine prohibits copyright protection for "incidents,
characters or settings which are as a practical matter indispensable, or at least standard, in the
treatment of a given topic." *Incredible Tech.,* 400 F.3d at 1012 (citation omitted). In other
words, "a copyright owner can't prove infringement by pointing to features of his work that are
found in the defendant's work as well but that are so rudimentary, commonplace, standard, or
unavoidable that they do not serve to distinguish one work within a class of works from
another." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP,* 329 F.3d 923, 929 (7th Cir. 2003).

### B.    Substantially Similar Test

Hobbs sets forth the following areas of similarity in the songs' lyrics to establish that
Defendants infringed his copyrighted lyrics to "Natasha":

- A theme of impossible love between a Western man and a Communist woman during the Cold War;

- Both songs have descriptions of a woman's pale eyes;

- Both songs reference sending correspondence in the mail;

- Both songs repeat and emphasize a concept of events that never happened – the word "never" appears 12 times in "Natasha" and 11 times in "Nikita";

- In the chorus, the title names are each repeated four times and then combined with the phrases "You'll never know," "you will never know," "to hold you," and "I need you;"

- The phrase "to hold you" is repeated three times in Plaintiff's song, and four times in Defendants' song;

- Each song has a one-word, phonetically-similar title consisting of a three-syllable Russian name, both beginning with the letter "N" and ending with the letter "A;" and

- The title name is repeated 13 times in "Natasha" and 14 times in "Nikita."

9

Of these listed similarities, there are certain themes or ideas that Hobbs argues are protected under the Copyright Act, including the impossible love affair during the Cold War, a postal theme, and references to a woman's pale eyes. These themes are not protected under the Copyright Act because they are rudimentary, commonplace, and standard under the *scènes à faire* doctrine. *See Atari,* 672 F.2d at 915 ("such stock literary devices are not protectible by copyright"). Moreover, phrases and themes that are common, trite, or clichéd are not protected under copyright laws. *See Peters,* 776 F.Supp.2d at 750; 37 C.F.R. § 202.1. As the Seventh Circuit teaches: "If standard features could be used to prove infringement, not only would there be great confusion because it would be hard to know whether the alleged infringer had copied the feature from a copyrighted work or from the public domain, but the net of liability would be cast too wide; authors would find it impossible to write without obtaining a myriad [] copyright permissions." *See Gaiman v. McFarlane,* 360 F.3d 644, 659 (7th Cir. 2004).

The theme of a Cold War love affair, for example, is not protected under the Copyright Act because this was a common theme in songs, books, and movies for decades. *See Hoehling v. Universal City Studios, Inc.,* 618 F.2d 972, 979 (2d Cir. 1980) ("Because it is virtually impossible to write about a particular historical era or fictional theme without employing certain 'stock' or standard literary devices, we have held that *scènes à faire* are not copyrightable as a matter of law."); *see also Lexmark Int'l Inc.,* 387 F.3d at 535 ("phrases that are 'standard, stock, ... or that necessarily follow from a common theme or setting' may not obtain copyright protection."). In particular, the theme of a Cold War love affair is present in other songs written

during the same time period that Hobbs wrote "Natasha."[4]  Also, the reference to a woman's light-colored eyes is also too common or clichéd to be protectable expression.  In fact, in 1982, which was the same year Hobbs wrote "Natasha," Defendant John wrote a love song called "Blue Eyes."[5]  Likewise, a postal theme in a love song is very common in popular music.[6]

Further, the references to the postal theme are expressed differently.  Hobbs' lyrics in "Natasha" are "you never sent me a Valentine" and "Nikita" states "do you ever see the letters that I write?"  Likewise, the descriptions of women's eyes are expressed differently, namely, Taupin's and John's lyrics state: "With eyes that looked like ice on fire," whereas Hobbs' lyrics are "Misty tears in those pale blue eyes."  *See Peters,* 692 F.3d at 636 ("entirely different lines" are not substantially similar).

Next, Hobbs argues that the songs' lyrics are substantially similar because they emphasize a concept of events that never happened and that the word "never" appears multiple times in both songs, as well as the phrase "to hold you."  Again, the concept of events that never happened is too generic to constitute an original expression protected under the Copyright Act.  *See Bucklew*, 329 F.3d at 929-30.  Also, the word "never" and the phrase "to hold you" are not sufficiently unique to be protectable.  *See Peters,* 692 F.3d at 633-34.

---

[4]  *See* Devo, "Cold War," http://www.lyricsfreak.com/d/devo/cold+war_20039646.html ("I heard it said that all is fair, In love and war so what's life for, The boy and girl, Two separate worlds, The endless tug of war, Uh!"); David Bowie & Brian Eno, "Heroes," http://www.lyricsfreak.com/d/david+bowie/heroes+single+version_20962708.html ("I, I can remember (I remember), Standing by the wall (By the wall), And the guns, shot above our heads (Over our heads), And we kissed, as though nothing could fall (Nothing could fall)").

[5]  *See* Elton John & Gary Osborne, "Blue Eyes," http://www.lyricsfreak.com/e/elton+john/blue+eyes_20046435.html

[6]  *See* Dario Marianelli, "Love Letters," as performed by Elton John, http://www.lyricsfreak.com/e/elton+john/love+letters_20046251.html

Hobbs additionally points to the chorus, also known as "hook," of each song, arguing that the title/women's names are each repeated four times and then the names are combined with the phrases "you'll never know," "you will never know," "to hold you," and "I need you." The phrases, "you'll never know," "to hold you," and "I need you" are commonly used in musical lyrics.[7] Also, short phrases that do not express an "appreciable amount of original text" are not subject to copyright protection. *See Alberto-Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir. 1972); 37 C.F.R. § 202.1.

Meanwhile, although Hobbs argues that the lyrics are substantially similar because "[e]ach song has a one-word, phonetically-similar title consisting of a three-syllable Russian name, both beginning with the letter 'N' and ending with the letter 'A,'" he acknowledges that the titles "Natasha" and "Nikita" are not identical. Because "titles by themselves are not subject to copyright protection," *see Peters*, 776 F.Supp.2d at 749, the comparison of the two titles is not relevant to the Court's analysis, especially because they are not the same. *See* 37 C.F.R. § 202.1; *see also Wihtol v. Wells,* 231 F.2d 550, 553 (7th Cir. 1956). Furthermore, both names are popular – a quick search on the United States Copyright Office's Registered Works Database reveals that there are other songs entitled "Natasha" and "Nikita" that have copyright protection. *See* http//cocatalog.loc.gov.

Hobbs also contends that the songs are substantially similar because the women's names are repeated approximately thirteen times in each song, including the repetition of the names in the hook. Although both songs repeat the women's names throughout the song, courts have

---

[7] *See, e.,g.,* Mindi Adair, Matthew, Hagen, "You'll Never Know," performed by Frank Sinatra, http://www.lyricsfreak.com/f/frank+sinatra/youll+never+know_20055900.html; Keith Moon, "I Need You," http://www.lyricsfreak.com/w/who/i+need+you_20146459.html.

recognized that in popular music, most songs are "relatively short and tend to build on or repeat a basic theme." *See Selle,* 741 F.3d at 904; *see also Johnson,* 409 F.3d at 22; *Gaste v. Kaiserman,* 863 F.2d 1061, 1068 (2d Cir. 1988). Indeed, repeating the name of a love interest is common in popular music.[8]

Thus, after filtering out the non-protected elements, no similarities exist between the two songs except for generic themes, words, and phrases, as discussed above. In other words, the ubiquity of the common sayings sprinkled throughout both "Nikita" and "Natasha," along with the repeated use of these commons phrases and sayings in other songs, establish that Defendants' lyrics to "Nikita" do not infringe on Hobbs' lyrics to "Natasha." *See Peters,* 692 F.3d at 635-36. In sum, the similarities highlighted by Hobbs are not sufficiently unique or complex to establish copyright infringement. *See id.* at 635; *Selle v. Gibb,* 741 F.2d 896, 904 (7th Cir. 1984).

Indeed, Hobbs all but admits that these elements are not protectable individually, but argues that his unique combination of these elements creates a protectable, copyrightable work. (R. 31, Hobbs' Resp., at 7.) As such, Hobbs asks the Court to compare the "total concept and feel" of the two works without looking at whether the copied parts are protected under the Copyright Act. *See Atari*, 672 F.2d at 614. Despite Hobbs' argument, the Seventh Circuit has made it abundantly clear that "[i]f the copied parts are not, on their own, protectable expression, then there can be no claim for infringement of the reproduction right." *Peters,* 692 F.3d at 632; *see also Incredible Tech.,* 400 F.3d at 1011-12 ("despite what the ordinary observer might see, the copyright laws preclude appropriation of only those elements of the work that are protected

---

[8]  *See* Raymond Davies, "Lola,"
http://www.lyricsfreak.com/k/kinks/lola_20079021.html; Gordon Sumner,
"Roxanne,"http://www.lyricsfreak.com/j/juliet+simms/roxanne_21016751.html

by the copyright.").

Nevertheless, when viewing these elements in combination, Hobbs has not plausibly alleged that "Nikita" infringes on "Natasha" because the two works do not share any unique features that "give rise to a breach of the duty not to copy another's work." *Peters,* 692 F.3d at 633-34; *see Selle,* 741 F.3d at 904. Moreover, there are many dissimilarities between the two songs, including that "Natasha" is about a man from the United Kingdom and an Ukrainian woman who met, but never had a chance after the woman sailed away. Whereas, "Nikita" is about an East German woman looking through the wires of the Berlin wall with guns and gates holding her in and soldiers guarding the area. Also, it is apparent from the lyrics in "Nikita" that the man and woman never met. In short, the songs' lyrics are different in content and tell different stories. *See Peters,* 776 F.Supp.2d at 751. Therefore, even assuming that the elements highlighted by Hobbs are protectable, an ordinary reasonable person would not conclude that Defendants unlawfully appropriated Hobbs' lyrics. *See Incredible Tech.*, 400 F.3d at 1011. The Court thus grants Defendants' motion to dismiss Hobbs' copyright claim.

## II.      State Law Claims – Counts II and III

Next, Defendants argue that the Court should dismiss Plaintiff's state law claims for a constructive trust and an accounting – both equitable remedies under Illinois law – based on preemption. *See* 17 U.S.C. § 301(a). In his response brief, Hobbs does not address Defendants' preemption argument. *See Steen v. Myers,* 486 F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in legal memoranda amounts to abandonment of claims). For the sake of completeness, however, the Court will determine whether the Copyright Act preempts Hobbs' state law claims for equitable relief.

14

"The Copyright Act preempts 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106' and are 'in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103.'" *Seng-Tiong Ho,* 648 F.3d at 500 (quoting 17 U.S.C. § 301(a)). The Seventh Circuit has "distilled from the language of § 301 two elements: 'First, the work in which the right is asserted must be fixed in tangible form and come within the subject matter of copyright as specified in § 102. Second, the right must be equivalent to any of the rights specified in § 106.'" *Id.* (quoting *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663, 674 (7th Cir. 1986)).

Because the material to which Hobbs asserts rights – the lyrics of the song "Natasha" – are expressions in tangible form, the first element of preemption is satisfied. *See* 17 U.S.C. § 101 ("A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration."); *see also Johnson v. Cypress Hill,* 641 F.3d 867, 870 n.5 (7th Cir. 2011) ("a 'composition' copyright [ ] protects rights in the underlying work, i.e., the music and, if applicable, lyrics.") (citing 17 U.S.C. § 102(a)(2)).

"The second element for preemption is that the rights in the state law claims be equivalent to the exclusive rights under the Copyright Act." *Seng-Tiong Ho,* 648 F.3d at 501. The exclusive rights set forth in the Copyright Act, include the right to reproduce the copyrighted work, prepare derivative works, distribute copies of the work, perform the copyrighted work publicly, and display the copyrighted work publicly. *See HyperQuest, Inc. v.*

*N'Site Solutions, Inc.,* 632 F.3d 377, 382 (7th Cir. 2011).

Here, Hobbs' claim for an accounting relies upon 17 U.S.C. § 504, regarding Hobbs' recovery of all profits that are attributable to Defendants' acts of infringement.  (Compl. ¶ 44.) Furthermore, Hobbs bases his constructive trust claim upon Defendants' alleged infringement of his copyright of "Natasha."  (*Id.* ¶ 42.)  Because Hobbs' claims for state law remedies are entirely based on his copyright claim, the Copyright Act preempts them.  *See Evan Law Group LLC v. Taylor,* No. 09 C 4896, 2010 WL 5135904, at *7 (N.D. Ill. Dec. 9, 2010) ("Copyright Act preempts rights, including state common law remedies, that are equivalent to an exclusive right within the general scope of copyright as specified in federal copyright law."); *see also Heriot v. Byrne,* No. 07 C 2272, 2008 WL 5397496, at *4 (N.D. Ill. Dec. 23, 2008) (equitable accounting claim preempted by Copyright Act).  The Court therefore grants Defendants' motion to dismiss the constructive trust and accounting claims as alleged Counts II and III of the Complaint.

## CONCLUSION

For the these reasons, the Court grants Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismisses this lawsuit in its entirety with prejudice.

**Date:** October 29, 2012

ENTERED

AMY J. ST. EVE
**United States District Court Judge**